Good morning, Your Honors. My name is Jonathan Kaufman. I represent the petitioner. This is an immigration case. It's a petition review of a deportation order entered against the petitioner by the BIA. And the petition requires the court to determine if the BIA deprived the petitioner of a full and fair hearing on his application for asylum in the United States. This is the fellow whose party now has the presidency of Mexico, correct? Excuse me? Is this the fellow whose party has the presidency of Mexico? Am I getting the right case? That's the factual assertion. Yes, that's what I thought. It's brief. Yes. But that's not really the issue that the BIA addressed or the immigration judge addressed. The petitioner applied for asylum affirmatively to the INS, and his application was referred to an immigration judge for consideration in a removal proceeding. When he appeared at his master calendar hearing, he withdrew his asylum application based on the erroneous belief that he was eligible for other forms of relief from removal. When he got to his individual calendar hearing, it was determined that, in fact, he was not eligible for any other form of relief, and he sought to It was the basis that they thought that he had entered in 1986, whereas he really had entered in 1989. That's correct. And then because of the stop-time rule, he was ineligible for cancellation. Who made that mistake? Was that you? No, I didn't represent him at the removal hearing. That's a good thing. Actually, the attorney who represented him has been disbarred. Yes, that's correct. The immigration judge would not permit the petitioner to reinstate his application for asylum and didn't state any reason at all for not permitting him to go ahead and apply for asylum in light of the fact that he wasn't eligible for any other relief from removal at that point. That decision was appealed to the BIA, and the BIA found that, in fact, the judge or the BIA was critical of the immigration judge for having failed to articulate any reason. The BIA found that the petitioner's desire to reinstate his asylum application, given the circumstances, was reasonable. And the BIA also refused to let him have an asylum hearing, but for an entirely different reason. The BIA said that the written application failed to state a prima facie case, and petitioner failed to show that he was prejudiced by not having a hearing on his asylum application. You would like this to be treated, what, as a motion to reopen? No, I think that it's wrong to place this petitioner into the position of someone who's asking to reopen a case. So if it's not analogous to a motion to reopen, what the government argues, I think, that we don't have jurisdiction in, because what are we supposed to be reviewing? What's the standard of discretion? The standard of discretion is the standard stated by the BIA. Number one, was it appropriate for the BIA to say that where an alien is making a reasonable request to reinstate an asylum application that was erroneously withdrawn, that he has to meet the standards of a motion to reopen, that he has to show prima facie eligibility, whether or not that is an abuse of discretion by the BIA in saying that those standards must be met. Where an alien has not been ordered deported, an alien isn't seeking to reopen a case that has already been concluded. He's appearing at an individual calendar hearing that's been scheduled. Time has been blocked off to consider applications he wants to make for relief from removal. Nothing could be more reasonable than that. And so to say that he has to actually present a prima facie case, I think, is an arbitrary standard that's being applied to an alien in that situation. But even if the Court wants to say that the BIA was not abusive in making that standard, then the way that it applied the law to the facts of this case was wrong, and the Court would review the BIA's finding that prima facie eligibility was not established de novo, because that's a legal finding. And the application did, in fact, state, in a very minimal way, but did state facts from which it could be proven that he had a well-founded fear of persecution, which the BIA didn't even analyze. All the BIA analyzed was whether or not the application stated facts to prove past persecution. The Court also reviewed the law. I just want to make sure now I understand the argument. You're saying that this is a unique motion for reinstatement, and that it's looking at the reinstatement motion, we can determine we have jurisdiction to determine whether it was arbitrary and capricious on the part of the Board to have required or imposed the prima facie showing standard that's used in removal hearings. I do, Your Honor. I don't think that the government's position that the APA precludes judicial review of this BIA decision is very meritorious. It is correct that there is no statute that dictates the standards that an alien needs to meet in order to reinstate an application that he erroneously withdrew based on a reasonable assumption that he wasn't eligible. I mean, you have a lot of different factors. Because the absence of a statute dictating the standard is irrelevant because the BIA itself in its decision set up the standard that it was going to follow. It set up legal criteria. An alien needed to prove prima facie eligibility. An alien needed to prove that he was prejudiced as a result of the IJ's possible error. The other one. But then what are we reviewing it for? That's what I'm trying to say. For abuse of discretion. Of what they decided in terms of whether he made the prima facie showing or whether they erred in imposing the prima facie requirement in the first place. I would say that it's a two-step process. So how did they set up the standard? That's what I'm trying to understand. They set up the standard because the Attorney General said that the BIA, by regulation, exercises the Attorney General's discretion to do what is necessary and appropriate for the disposition of the case. I know. I understand if you're asking us to review whether they applied the prima facie rule appropriately. Okay. But I'm having trouble understanding. And I apologize for being slow. But what is the standard by which we judge whether they adopted that standard appropriately or not? What do we look to? You would look to the regulation, which requires that they exercise discretion. And you would then apply an abuse of discretion standard to their decision. Okay. Is there a showing required of what a prima facie showing of why he would be eligible for asylum? That's what the BIA did. The BIA said that he had to actually show that the application had a certain level of merit. Yeah. If he hadn't withdrawn the application. Are you contending that's not the case, that that was error? I think that that was error also, because by saying that at the point where the hearing was ongoing, that really the only issue, as far as BIA should have been concerned, was whether there was good reason for him to have withdrawn the application. Was there a reason to let him reinstate the application? Not what is the merit of the application, but. Well, I think we're both having a problem deciding what it is that the alien has to show in order to get it reinstated. That he had filed a timely application. All right. And that it was withdrawn for, that there's a good cause for permitting him to reinstate it. That's it. The good cause for reinstating. Yes. And as a part of that good cause, isn't there a showing necessary that he has at least a prima facie case for proving asylum? Our first argument, Your Honor, would be that the BIA erred in saying that that had to be met, that there had to be a prima facie showing of eligibility. Otherwise, he isn't prejudiced by having withdrawn it, is he? If he doesn't have a case. That's correct. But that's a second issue that arises here. The first issue is whether or not he has to show prima facie. But, yes, we would concede that, that if, in fact, he did not have a case. Assuming that he did have to show it, what has he shown? Well, he did show, in fact, a prima facie case. Well, that's what I would like to hear. What is it? Well, his prima facie case was that he said he was a member of a political party. He says that the government's federal police would harass him, would question him, would detain him, would take him to a desolate place, and would threaten him, all in an effort to make him terminate his political affiliation. So that's a prima facie case for asylum. Well, and I guess that the reliance of the IJ was that, look, that's all being alleged, but there's no past persecution that would indicate that there's going to be anything in the future. Well, the IJ didn't articulate any reason for having permitted the – not permitting the Petitioner to reinstate his application. That's what the BIA said, was that there was no past persecution. But the BIA didn't analyze in any manner the application under a standard of a well-founded fear. They just said there's no past persecution. Well, but isn't that the reason why they were looking to past persecution? I mean, past persecution can be a basis alone. It has to be a severe persecution and so forth. But the point of past persecution usually is to show that it's going to continue on in the future, and that's a reason for a well-founded fear of persecution in the future. And they're saying there was none of that. No, but a well-founded fear can be established even if there is no past persecution. Past persecution makes a presumption. That's right. It helps. And I think that's what they were – yeah. And I – and I think that there's – it could be argued that this application doesn't state sufficient facts to prove past persecution. But it could still – It could be argued. Was there anything you said about past persecution? Well, there was threats and harassment. Okay. My time is up. Thank you. Thank you. Thank you. Hello again, Your Honors, and to my fellow government. The key in this case is that Petitioner is attempting to shift responsibility for his own error. The case represents his efforts to resurrect an asylum application, which he voluntarily withdrew. There is no – By mistake. I'm sorry? By mistake. Yes, Your Honor, but it was something that in withdrawing any application, it is incumbent on the Petitioner to, you know, what he's doing, to voluntarily do so based on the circumstances. All right. We have somebody who by mistake withdrew the application. What do you contend has to be shown in order to reinstate it? Your Honor, at a minute – well, when you withdraw your application, you in effect terminate the application just as a proceeding in which you actually presented evidence and the immigration judge denied the application. It's effectively the same type of result, and as a result, in doing so, in order to – What authority do you have for that proposition? I'm sorry, Your Honor, if you could – What authority do you have for that proposition? Your Honor, it's – That the withdrawal is the same as trying the case, isn't it? Your Honor, I can't provide the court with any authority off the top of my head. It's more of a reasoned conclusion because the end result is the same, that by withdrawing the application, there is no longer an application that exists. There's nothing that – there's no benefit that is gained from the withdrawal of the application, just as there is no benefit gained when the application is denied. In any event, there is no standard for measuring a request or the denial of a request to reinstate, and as a result, the court doesn't have jurisdiction under 5 U.S.C. 701. As the court has indicated and as Petitioners have failed to articulate, there really is no basis on which the court can measure whether or not it's appropriate for the agency to deny the request for reinstatement. I'm sorry. You said the court has indicated? Well, it was based on some of the questions, at least the line of questions. But you shouldn't read those. I apologize, Your Honor. And I will rely solely on the fact that that Petitioner was unable to respond to the court's questions sufficiently. That's your judgment, but that's not necessarily the judgment of the court. Yes, Your Honor. In any event, regardless of whether the court believes that there is an agency action committed solely to the discretion of the agency such that the court has no jurisdiction. You're saying that even though you're supposed to exercise discretion, we can't review it for an abuse of discretion? Not when there is no standard. This court has stated. You can't give us any authority as to why you treat this motion the same as a motion for reopening. That's just a reasoned conclusion on your part. Yes, Your Honor. We should defer to that. Yes, Your Honor. All right. And there is no standard for it. And as this court has stated in the series of cases that were indicated in the government's brief, when there is no law by which we can base the court's jurisdiction, the court has no review under 5 U.S.C. 701. All right. Assuming we don't accept that arguendo. Yes. I have a question about assuming that the board could have, within its discretion, applied the prima facie case requirement that it does in removal proceedings. The circuit recently got its hand slapped for taking upon itself to resolve the question of whether or not changed circumstances mooted the issue of persecution. And speaking of the INS versus Ventura, we were told that when the Board of Immigration Appeals didn't resolve that question itself, that we should not take it upon ourselves to do so, even if it appeared in this case, for example, that the party to which the claimant, the petitioner is a member, is now the governing party of Mexico. Should we remand this to the BIA then, or should we decide that issue ourselves? Your Honor, the circumstances are different. And for one, the standard of review in the case of Ventura was different because it was a matter of whether or not there was substantial evidence to support the board's determinations. Here we're dealing with an abuse of discretion standard, if any standard at all is to be applied. And in looking to determine whether or not petitioner has presented any kind of evidence, any valid claim, the court may take a look and must take a look at the entire record and can consider a de novo as far as whether or not there's a prima facie showing here. Because in order to assess whether there was a due process violation, the court can look at the record de novo. And because petitioner, in effect, has raised a due process violation claim, the court must consider the entire record, including evidence that may be judicially noticeable. The current circumstances do reflect upon the validity of petitioner's asylum claim. Even if the court were to consider the application, the court would have to determine whether he can establish his burden of proving by specific evidence that he had either been persecuted in the past or had a well-founded fear of future persecution. As the board had indicated, there was no showing of past persecution based on harassment and empty threats. And this court has already stated in various cases, a limb and a slew of others, that empty threats and harassment are not sufficient for a claim of past persecution. As far as a well-founded fear of persecution, he cannot establish that, given that the current party that is in control is the party which he affiliated himself. And he, at a minimum, in making a claim of a due process violation, has to show that there is some sort of prejudice because he could make a prima facie case. Well, how should this court – I mean, we can take judicial notice generally, but is this court really in a position, if we're down to a reasonable fear of future prosecution, predict the status of what's going on in Mexico? Is the idea of Vincente Fox not necessarily as popular now? Would a PRI come back into power? I mean, are those judgments we should be making? Your Honor, it's a consideration that the court can and should make in a claim of a due process violation. Besides the fact that Petitioner has not been denied an opportunity to be heard by the agency, rather it's his own error that really precluded him from having a hearing, the fact of the matter is he still has to show prejudice. And he cannot establish prejudice if the court takes a look and applies the de novo standard, which it can do so in a due process challenge, to look at the record and then find that, well, has he established a prima facie case? And that means that the court can consider judicially noticeable facts, especially where his claim is based on his affiliation with a party that is currently in power. Kennedy. But shouldn't we wait until the BIA addresses the question of well-founded fear of future persecution? All the BIA addressed was past persecution. Yes, Your Honor. Why should we do it when they haven't? Should we remand them to do it? The court may do so to be on the safe side and remand it back to the board. However, because this is a due process challenge and the basis for the denial of the request for reinstatement is that he couldn't establish a due process violation. And, again, in applying a de novo standard of review, the court may consider. It's a different standard of review than that of INS Ventura. In that case, deference had to be accorded to the board's decision. And if the board did not make a determination on an issue, then out of deference to the board's expertise, the court had to remand it. He has, in fact, made a case for a well-founded fear of persecution just by making a de novo review. And if we reverse the BIA and say, yes, he's entitled to stay. Your Honor, no, that would be far-reaching because the agency never made a decision on an asylum application because he had withdrawn the asylum application. This court may, if it chooses to do so and finds that he did. They say under due process we can do all this de novo reviewing. And I'm just wondering if that carries that far. No, Your Honor. The de novo review is limited to determining whether he has established a prima facie case of eligibility. Okay. So what you're saying is we could, applying de novo review, conclude that there is some reasonable basis to consider a fear of future prosecution, and therefore he has made his prima facie case. He satisfied the prima facie case. So now he's entitled to have the matter reopened, to reinstate. We could do that. If I understand correctly, if I can restate my understanding of it, Your Honor, if the court applies a de novo review and looks at the entire record and finds that there is a reasonable possibility that he has an asylum claim, then the court could find that the board should actually allow him to reinstate his asylum application. Thank you. And in this case, he has no case. I understand you take that point. I just don't want to get the Solicitor General going after us again. Yes, Your Honor. Please. You have a minute. I think that the issue or the fact that the Petitioner voluntarily withdrew his asylum application is a red herring, because the BIA said that he acted reasonably in seeking to reinstate it. So it really doesn't matter. Yes, he voluntarily withdrew it, but the BIA said that he acted reasonably ultimately in wanting to renew it. And as far as the court's ability to take judicial notice of changed country conditions, the court could take judicial notice that Vicente Fox is now the president of Mexico, but that doesn't really end the inquiry. And more importantly, at no point in the pleadings and at no point until today did the government ask the court to take judicial notice. So the fact that the court does have the authority to take judicial notice, it must be requested to do that. If in its brief it had asked for judicial notice, then possibly it could be appropriately done. But to come here today and to say that the court does have that authority is correct, but it hasn't the government hasn't properly invoked that authority. So I don't know that the court can in fact take judicial notice under these circumstances. All right. Thank you. Judge Gibson, any questions? No questions. Thank you. The case is argued to be submitted. Thank you both. The next case on calendar Sosa versus Ashcroft has been submitted on the briefs, as has the Vegas versus Ashcroft, also submitted on the briefs. And the final case on calendar is Howard versus Barnhart. Counsel, you may proceed. Thank you, Judge. May it please the court, my name is Mark Caldwell. I'm here this morning representing Sarah Wolf in this child's disability case as a preliminary matter, if I may. I'd like to request permission to reserve two minutes for rebuttal. You may reserve. Just watch your time. Thank you, Judge. There's two ways this Court can handle this case. The first one I'll only address briefly because I think it's pretty straightforward. That's remand for award of benefits. The case I would cite in support of that is the Schneider case where this Court said that lay testimony can be credited in Schneider. The Court indeed used lay testimony to find that the claimant's condition equaled the presumptive disability criteria in the listing of impairments. This case is a little bit easier than Schneider in two respects. One, in Schneider, the ALJ found that the lay testimony was not credible, or at least didn't consider it. Here, the ALJ specifically found that the Anne's testimony, Sherry Howard's testimony, was credible. He just didn't factor it into his conclusions. Two, the 1996 amendments don't require a citation to a specific listing when finding equivalence. It's sufficient to find that equivalence is, in general, to the listing of impairments. That's the easy part. The hard part is if this case, this Court decides to remand this case for further proceedings. In that case, I believe we are faced with a question of first impression, and that is interpretation of the statute that requires the Commissioner to make reasonable efforts that a pediatrician or other appropriate specialist evaluate the individual's case. Here, the ALJ was specifically asked to call a medical expert to testify at the hearing. He specifically declined to do so, so we know that the ALJ made no effort to call a medical expert to evaluate the case of the individual. Instead, the ALJ based his decision, and I'm quoting directly, my review of the medical evidence. The ALJ made a review of the medical evidence in his decision, then reached a conclusion that the claimant did not equal the listings, but he never married those two things together. Why does a review of the medical evidence fail to show that the claimant equaled the criteria of the listings? That's exactly the practice that this Court discouraged in the Regenreiter case, where it said simply listing objective factors, even if done seriatim, is not enough to fulfill the ALJ's obligations. The district court, although I realize the district court's decision is in what's being reviewed here, but the district court made what I consider to be a mistake. The district court said, well, the child's had a lot of evaluations. A lot of people have seen this child, and that pretty much was what the ALJ said, too. My response to that is the plain language of the statute doesn't say the Commissioner shall make a reasonable effort to have the child examined, because there are already provisions for that in terms of consultative examinations. The Commissioner said the statute says the Commissioner must make a reasonable effort to have the case evaluated. I think a reasonable reading of that statute is the entire case. The entire case includes the additional evidence submitted before the ALJ, which in this case was very important because it was the Arizona long-term care assessment that found the child was at risk of institutionalization. The additional the case involved the odds testimony, and I think that was very important. Even the ALJ said she was credible, and she identified a number of deficits that I think a medical expert would have looked at. It's also not enough that the non-examining State agency physicians reviewed this child's case at the initial and the reconsideration stages. Again, that was already provided for at the time the statute was enacted. If that was enough, then the statute would have no meaning. And I think it's the principle of statutory construction that it should not be interpreted in such a fashion. There's no legislative history on this, is there? I tried mightily to find anything at all, and I couldn't find a thing, not a thing. Because in this child, this was a cutback on the statute, was a cutback, as I recall, on the benefits available. Isn't that correct? Overall? Overall, I would agree with that, yes. But this does introduce the notion that there would be a qualified pediatrician. Or other qualified. Right. But I take it the argument is in case of child disabilities, Congress appears to have been focused on getting someone who's familiar with child diseases and development. So the other individual, is it enough if they are just someone who's inexperienced in dealing with psychiatric problems or rheumatoid arthritis, or whatever it may be, doesn't necessarily have to be a pediatrician? Or does the do the people who testify evaluating the case have to be specifically qualified in childhood diseases? That would certainly be my argument. For example, there's some mental aspects to this case. If the ALJ just called a psychologist, somebody with Ph.D. after their name, I'd say, wait a minute, let's find out what kind of psychologist. And if that psychologist isn't a child psychologist or at least can't say, well, I've got experience in dealing with children, I would object. I would say if the statute says appropriate specialist, and that's not an appropriate specialist. Does that answer your question? Yes, thank you. Okay. There are a couple other things that I'm only going to touch on briefly because they're not the overall focus of the case. But the other problem with this case is the ALJ's selective analysis of the evidence. Most specifically, his failure to look at the Arizona long-term care evaluation that said this child was so impaired that she was at risk of institutionalization, also contrary to the ALJ's version of the facts, found that the child needed occupational speech and physical therapy. The other problem, again just touching on it briefly, is that the ALJ was very unclear as to how he was reviewing this. As you just mentioned, Judge Fisher, there was a statutory change here. If the ALJ not once, not twice, but three times says he's reviewing this case as a continuing disability review for medical improvement, that has nothing to do with the statutory changes that you mentioned. At that point, then, unless there are further questions from the Court, I will reserve the rest of my time. All right. Judge Gibson? Judge Gibson, any questions? No questions. Okay. Thank you. May it please the Court? My name is William Dawson, appearing on behalf of the Commissioner of Social Security. The Pelliss argument that the Commissioner did not comply with the Statute 42 U.S.C., Section 1382, CA3I. Could you speak up a little? I can't hear you. Okay. This case is completely without merit. Here, Appellant's case was evaluated by two state agency physicians. The case? The case was evaluated? The case was evaluated. The state agency physicians basically take a look at the available medical evidence and determine whether or not the child meets, equals, or functionally equals the listings. Notably in this case, Dr. Kirshnevik is a pediatrician, as indicated by the AMA Medical Association, American Medical Association's website. That's in the record? That's not in the record. Is that enough? I mean, the ALJ didn't evaluate him as an expert to evaluate the case, per se, did it? The ALJ did not, no. The ALJ did not evaluate him. You're just saying because there's these two folks, two doctors in the record, that's enough to meet the statute? That's enough to meet the statute alone. In addition to that, the ALJ did send the child out to have a consultative psychological evaluation on two occasions, and this was done by Dr. Leonard on August 1997, and this is at excerpts of record 16 through 21. And she also evaluated him on April 1998, excerpts of record 27 through 31. Notably, Dr. Leonard is a specialist in child psychology, and this is indicated on her letterhead at excerpts of record 27, I believe. It says, Elizabeth L. Leonard, Director of Clinical and Neurobehavioral Disorders, Child and Adult Psychology. Finally, the commissioner was not obligated to consult other appropriate specialists, as the district court found. The appellant was evaluated by numerous medical and non-medical specialists. She was evaluated by at least 11 separate specialists, a developmental psychologist, a child psychologist, a neuropsychological fellow, school psychologist, occupational therapist. Look, this is an issue that's troublesome to me, because I do note that this statute cut back on benefits to children, but did take the trouble to specify that it be a qualified or other individual like knowledge to evaluate the case. And what I'm concerned about, although in this case there seem to be, have been a lot of doctors looking at this unfortunate young girl, that somehow the notion that the ALJs can satisfy the statute by saying, well, you know, they're examining or consulting doctors here who fit the category of having pediatric type experience. So that's enough to satisfy the mandate of the statute. I don't find that an appealing reading of the statute. It doesn't seem consistent with what Congress had in mind, that they wanted an expert who would assist the ALJ, who may not be familiar with the peculiarities of childhood diseases and the difficulties, instead of dealing with... But it's... Can I just finish? Okay. Because I'm really interested in getting your complete thoughts on this, that if the ALJs are going to start relying on just the witnesses who are brought forward, that does not seem to be what the statute contemplates. It contemplates that the ALJ make an effort to get that expertise to help him or her evaluate the case. And that's why I'm concerned, even in the... Given the number of people you're listing here, did those people really evaluate the case, or did they come in, as we so often see? We had a case yesterday where the surgeon looked at the woman's chronic sinus condition, but he was just looking at a narrow issue. Yes, he was an expert in sinusitis or whatever, but he wasn't there to evaluate the full picture. And you all were arguing, your administration was arguing, well, you know, there's not enough evidence to support that. So how do we assure that the ALJs actually treat this congressional mandate seriously? Usually, you're right, you're correct. When the ALJ does send the claimant out for an evaluation, it is usually just a snapshot at that point in time. On some occasions, the evaluators are able to review some of the medical evidence of record, and they usually indicate that. So sometimes they might evaluate the case. But the way the commissioner usually has doctors evaluate the case is at the initial reconsideration levels of review. And in this case, the statute is worded in a way that it's not necessarily the ALJ has to have a medical specialist evaluate the case. It says, the commissioner shall make reasonable efforts. And it seems that the intent of the statute is to make sure that there is at least a doctor evaluate the case. Because sometimes a claimant may come forward and not have any medical evidence. They might just have, you know, just a couple of reports from occupational therapists or speech therapists or, you know, lay witness reports. This is the way to ensure that you at least have a physician, an appropriate specialist, evaluate the case. And that's what happened in this case. The claimant was, the case was evaluated by two state agency physicians. And they came in at what stage? They came in at the initial and reconsideration levels of review. In this case, it's a redetermination case. They determine the case over again. And it was Dr. Kirschvick evaluated the case in September 1997. And Kirschner evaluated the case about a year later in May 1998. What was his specialty? Dr. Kirschvick's specialty is not indicated in the record. But I did some research on the American Medical Association's website, which indicates he is a pediatrician in this case. I'm all for the website. But how do we substantiate what's floating around on the website as to whether it's accurate or not? Or do we just take that on faith? You can take it upon judicial notice. If you'd like, I could make a motion for that. Judicial notice of somebody's? You better start to ask some authority for me. Somebody's credentials. Let's start getting those on Doebert motions, and we're in big trouble. Okay. Plaintiff or appellant also argues that the standard in this case wasn't necessarily clear. But the ALJ indicated that he did redetermine an appellant's case under Public Law 104-193. He did mention the continuing disability review procedures in his decision. But he also specifically stated that the case was being redetermined under Public Law 104, at excerpts of records 75, 73, and also 84. In his final findings, he also indicated that he redetermined the case under Public Law 104-193. Now, that may be true, but as we heard in a different context today, a judicial officer can make statements that push the right buttons but substantively do something quite different. And the concern one has when the ALJ repeatedly cites the wrong process, he may invoke the statute, but how do we know he wasn't really applying a different standard, even though he invoked the right statutory authority? In this case, the substance of the decision indicates that it was a redetermination decision. He looked at all the evidence since she was found disabled, indicated that the evidence did indicate some improvement in this decision. In this case, because of the determination, he didn't have to find that there was an improvement in her condition because under the new statute, it was more stringent to become disabled. He just went through the new functional domains, indicated that, yes, there was some improvement, but under the new standard, she didn't meet equal or functionally equal to the listings. Okay. All right. Judge Gibson, do you have any further questions? I'm asking enough for a little while. Okay. Judge, there are a few points I want to make. I'm really not happy about hearing about extra record evidence at the time of oral argument, especially when it wasn't in the brief, but I don't think that's important. What's important is the administrative law judge in this case did not even mention the State agency physicians in his opinion. They didn't even exist as far as that opinion was concerned. Yet the Commissioner is saying that that satisfies the statute's requirement. Not only is that legally incorrect in terms of what I believe would be the reasonable intent of Congress, it's certainly factually incorrect under the facts of this case. But let's look at what the Commissioner just said. The State agency physicians reviewed the available medical evidence. Everything in this case was not available to those physicians. In particular, the Commissioner relies upon Dr. Leonard's second evaluation. At excerpts of Record 30, Dr. Johnson says this child should be sent out for a neurological evaluation. At excerpts of Record 38 through 39, we have that neurological evaluation that Dr. Leonard never saw. A physician who had testified at the hearing would have had both of those items of evidence available to him or her to evaluate the case, and that, I think, is very important. The only other point I want to make is about this standard of review by the ALJ, rather, and that is that it's hard for me to understand how the Commissioner can say, well, this business about medical improvement wasn't important because he also cited the statute, when the ALJ himself in his decision mentions that improvement is part of the reason for why he's making the decision that he's making. Under this Court's case in Holmahan and the Eighth Circuit's case in Goud, that would not necessarily carry the day in and of itself, but the point is it certainly is a matter of concern regarding what the ALJ, as you mentioned, Judge Fischer, had in his mind. Are there any other questions from the panel? I would be interested in your take on the statutory provision that says that the Commissioner shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in the field of medicine appropriate for the disability of the individual evaluates the case of this individual. Does that mean that there has to be one person testifying at the hearing that sums it all up, or can it be the evaluation other individual who specializes in the field is evaluating what those disabilities are? As a practical matter, I mean, I'm in the trenches. I'm a practitioner doing this. ALJs call medical experts to come into the hearing. I mean, that's just how it's done. I've never seen it done in any other way. Some ALJs call a medical expert every single case, which I approve of. Could there be a different way of doing it? The answer is yes. An ALJ could bundle up the whole record and send it off to an expert and say, you know, here's a list of interrogatories and send me a copy of them and allow me to respond and, you know, we could go down that road. As a practical matter, I think that's more difficult than having an expert actually come into the hearing where you can cross-examine them and get it all done at once. But this case illustrates an important point, though. The ALJ found that Sherry Howard, the aunt, was credible. And she listed a whole bunch of things that I think, as I already said, justify reversal and remand for awarded benefits under Schneider. But having said that, if you just bundled up the documents themselves and sent them to a medical expert and said, here they are, read them and give me your opinion, that still wouldn't substitute for what I believe is the more helpful route of being there and listening to the witness testifying and, as so often actually happens in these cases, medical experts saying to the judge, do you mind if I ask a question? And that's the question. So you're suggesting that this medical expert would sit through the entire proceedings? That is how it's done in practice, in Phoenix where I practice. And I think that's the better way for it to happen. That may be. But to answer Judge Hunt's question directly, does the statute actually require that? No, I don't think so. I would just guess the magistrate judge who reviewed all this made an extremely thorough evaluation of all the various people, probably more so than the administrative law judge did. I agree. And I'm just curious of whether that would be enough under the to comply with the statute. Okay. The answer to that is absolutely no. Even though the med — well, first of all, the magistrate judge, this guy did a very good job, I agree with you, doesn't substitute for what the ALJ did. It's the ALJ who has to make the decision. But, two, it's not enough to say here are all of the evaluations as a judge, whether it be an ALJ or a magistrate judge or any other judge, and then turn around and say, well, here's my medical judgment as to whether this child meets or equals the medical criteria in the listing of impairments. And I have this rather horrendous footnote in my brief about ALJs acting as their own expert witnesses, and that certainly would be my point in response to that question. Okay. All right. Judge Gibson, any further questions? No questions. All right. The case just argued will be submitted. Thank counsel for their arguments. And we will stand adjourned. Thank you.
judges: Hug, Gibson , Fisher